**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

VANESSA J. SHANK,
          Appellant,

    v.

DEPARTMENT OF THE ARMY,
          Agency.

DOCKET NUMBER
CH-0432-17-0451-I-2

DATE: April 26, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

C. Mike Moulton, Esquire, Elizabethtown, Kentucky, for the appellant.

Glenn Houston Parrish, Esquire, Fort Knox, Kentucky, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which sustained her removal for unacceptable performance under chapter 43. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the appeal to the regional office for further adjudication consistent with *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021), and the guidance below.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

The appellant most recently held the position of Physician at the agency's Ireland Army Hospital in Fort Knox, Kentucky. *Shank v. Department of the Army*, MSPB Docket No. CH-0432-17-0451-I-1, Initial Appeal File (IAF), Tab 1 at 1, 12; *Shank v. Department of the Army*, MSPB Docket No. CH-0432-17-0451-I-2, Refiled Appeal File (RAF), Tab 25, Initial Decision (ID) at 1.[2] In October 2016, the agency rated her performance as failing. IAF, Tab 4 at 344-49. The associated performance appraisal explained that while she had largely met or exceeded other standards, the appellant consistently failed to meet one performance objective. *Id*. at 345-46. Specifically, the appellant failed to "[c]omplete all charting within 72 hrs of visit (codes correctly in accordance with ICD-10)." *Id*. at 346. As further explained in the initial decision, ICD-10 is an industry-wide diagnosis coding system. ID at 2-3; RAF, Tab 27, Hearing Transcript (HT1) at 34 (testimony of appellant's supervisor). The associated performance objective was, in effect, both a timeliness and quality standard for the documentation of a patient visit. The appellant was not responsible for inputting a particular code; she was responsible for timely providing adequate information for purposes of follow-up care and reimbursement from the likes of Medicare or Tricare. ID at 2-3; HT1 at 13-19 (testimony of the appellant's supervisor).

Because of her failing performance rating, the agency placed the appellant on a performance improvement plan (PIP). IAF, Tab 4 at 351-52. The PIP singled out the aforementioned performance objective and recognized that the appellant had a backlog of incomplete/unclosed patient charts totaling 239. *Id*. at 351. In order to be minimally successful, the PIP indicated that the appellant was required to do two things—adhere to the charting requirement and eliminate her charting backlog.[3] *Id*. Rather than shrink over the next 5 weeks, the appellant's backlog grew to a total of 620. *Id*. at 351, 356-61. Nevertheless, in

---

[2] There are two docket numbers associated with this one appeal because the administrative judge dismissed the appeal without prejudice for automatic refiling at a later date to accommodate discovery delays. IAF, Tab 31 at 1-3.

the final days of her PIP, the appellant closed all of those open encounters, eliminating her backlog of incomplete charts. *Id*. at 362, 366.

The agency initially informed the appellant that she had successfully completed the PIP.[4] *Id*. However, in doing so, the agency noted that it would conduct a peer review to determine the appropriateness of her work. *Id*. at 366. Following that peer review, the agency reversed course. Citing extensive deficiencies in her charting for patient encounters, the agency determined that the appellant had not successfully completed the PIP or achieved the required improvements. *E.g., id*. at 372-73. To illustrate, a physician found that of 60 randomly chosen charts, half contained poor documentation of diagnosis and treatment, *id*. at 400, and a nonphysician found that more than two-thirds of the 600+ charts reviewed did not contain adequate information for purposes of coding and reimbursement, *id*. at 380-81.

In February 2017, the agency proposed the appellant's removal for unacceptable performance. IAF, Tab 1 at 12-15. In short, the agency alleged that the appellant's performance was unacceptable in the lone objective identified in the PIP—completion of all charting within 72 hours of a patient visit in accordance with ICD-10. *Id*. at 12-13. The agency later amended the proposal to

---

[3] The specific language of the PIP described the required improvement as closing patient charts within 72 hours and completing all delinquent charts within the PIP period, but another bullet point provided as follows: "[f]ailure to close charts in 72 hours." IAF, Tab 4 at 351. As the administrative judge recognized, it is apparent that this last bullet point was a typographical error or some other mistaken inclusion in the required improvement portion of the appellant's PIP. ID at 10 n.9.

[4] As the administrative judge also recognized, the date on the memorandum noting that the appellant closed out all of her patient encounters before the PIP's end contains a typographical error, seemingly identifying both the incorrect day and year. *See* ID at 9 n.8; *compare* IAF, Tab 4 at 351 (original PIP documentation, indicating that the PIP would begin on October 31, 2016, and end on December 19, 2016), 361 (memo dated December 14, 2016, indicating that the appellant's PIP had not yet ended and the appellant still had 620 open encounters), *with id*. at 362 (memo dated December 12, 2015, indicating that the appellant's PIP had ended and she had no open encounters remaining), 366 (PIP final review certification, dated December 22, 2016). These discrepancies do not warrant a different outcome.

account for additional documentation and a change in the deciding official. *Id.* at 18-21. After the appellant responded, IAF, Tabs 14-18, 20, the deciding official sustained the appellant's removal, which became effective June 13, 2017, IAF, Tab 1 at 23-26. This appeal followed. IAF, Tab 1.

The administrative judge developed the record and held the requested hearing before sustaining the action. ID at 1-2. He found that the agency met its burden of proving the elements required in a chapter 43 performance case such as this. ID at 4-17. He further found that the appellant failed to prove the affirmative defenses she raised—disability discrimination, sex discrimination, reprisal for filing grievances, and harmful procedural error. ID at 17-32. The appellant has filed a petition for review. *Shank v. Department of the Army*, MSPB Docket No. CH-0432-17-0451-I-2, Petition for Review (PFR) File, Tab 1. The agency has filed a response and the appellant has replied. PFR File, Tabs 3-4.

<u>The administrative judge properly found that the agency proved its chapter 43 removal action under pre-*Santos* law.</u>

At the time the initial decision was issued, the Board's case law stated that, to prevail in an appeal of a performance-based removal under chapter 43, the agency must establish by substantial evidence[5] that: (1) the agency communicated to the appellant the performance standards and critical elements of her position; (2) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (3) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her an adequate opportunity to improve; and (4) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 6 (2013).[6] On review, the appellant presents arguments that implicate the first, second, and fourth elements of the agency's

---

[5] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. 5 C.F.R. § 1201.4(p).

burden, so we affirm the administrative judge's findings regarding the remaining elements and address the others below.  PFR File, Tab 1 at 13-22.

*Communication of standards*

Concerning the first element of the agency's burden—that it communicated the performance standards and critical elements—the appellant argues that while the agency did communicate performance standards to her, including the charting requirements, it never identified the charting requirement or any other as a critical element.  *Id*. at 13-16.  Among other things, she notes that the term "critical element" is not included in her performance evaluations or other documents, and asserts that she had never heard of the term until after the conclusion of her PIP.  *Id*. at 13-14.  We are not persuaded.

A June 2016 performance evaluation plan, signed by the appellant, is devoid of the term "critical element" but lists her "major performance objectives/individual performance standards."  IAF, Tab 4 at 336-37.  The first of several items listed is to "[c]omplete all charting within 72 hrs of visit (codes correctly in accordance with ICD-10)."  *Id*. at 336.  The accompanying materials indicate that if an individual fails to do so at least 95% of the time, their performance would be failing.  *Id*. at 338.  In a separate memorandum, similarly signed by the appellant on the same date, the agency indicated that the appellant was not meeting the charting standard.  *Id*. at 340.  The memorandum described how the appellant acknowledged understanding the standard, but had fallen behind, "plac[ing] patients' health and safety at risk."  *Id*.  It directed the appellant to catch up on her charting backlog and adhere to the 72-hour rule going forward, otherwise she may be subject to removal.  *Id*.

In October 2016, the agency completed the appellant's performance evaluation.  *Id*. at 344-47.  That evaluation rated her overall performance as

---

[6] Additionally, we note that the agency also has the burden of proving that the Office of Personnel Management has approved its performance appraisal system and any significant changes thereto, but only if the appellant raises such a challenge, which does not appear to have occurred in this appeal.  *See Towne*, 120 M.S.P.R. 239, ¶ 6 n.5.

unsuccessful, describing how she had consistently failed to meet the charting standard, and indicating that she would be placed on a PIP for the same. *Id*. at 345-46. This document was also signed by the appellant, as was the PIP that followed. *Id*. at 344-47, 351-52. It appears that the PIP was the first document that explicitly used the term, "critical element," albeit without explicitly tying the term to the charting standard. *Id*. at 351. The PIP once again identified the appellant's performance objective as "[c]omplet[ing] all charting within 72 hours of visit (codes correctly in accordance with (ICD-10))." *Id*. at 351-52. It, too, warned that if she failed to achieve the results expected and required, the appellant may be subject to removal. *Id*. at 352.

While the appellant would have us find that the repeated warnings we just described were insufficient in the absence of the agency explicitly labeling the charting standard with the term "critical element," she has failed to identify any such requirement and we are aware of none. *See* 5 C.F.R. § 430.203 (defining a critical element as a work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable). In fact, we have previously approved of the agency's use of the term "objective" in lieu of "critical element." *Greer v. Department of the Army*, 79 M.S.P.R. 477, 480 n.1 (1998) (recognizing that the Department of the Army used the term "objectives" instead of "critical elements" on an employee's written performance standards and describing the two terms as equivalent). We therefore find no merit to the appellant's arguments and instead agree with the administrative judge. ID at 5-7. The charting requirement was a critical element and the agency met its burden of proving that it communicated the same to the appellant.

*Validity of standards*

In order to be valid, an appellant's performance standards must be reasonable, realistic, attainable, reasonably objective, and tailored to the specific requirements of the position. *Towne*, 120 M.S.P.R. 239, ¶¶ 21, 23. To the extent

that the appellant suggests that the administrative judge erred in concluding that the agency's performance standards were valid, PFR File, Tab 1 at 17-21, we find her arguments unavailing.

The appellant first asserts that the agency has treated its charting standard as a guideline, rather than a stringent requirement, as demonstrated by physicians routinely exceeding the 72-hour allotment for completing a patient's chart. *Id.* at 17-18 (citing IAF, Tab 4 at 419-998). Setting aside her assumption that inconsistent enforcement of a performance standard could invalidate the standard or otherwise render her removal improper, the record does not reflect the inconsistency the appellant suggests. As we previously recognized, the agency's performance standard did not require absolute adherence to the 72-hour rule; it instead required adherence to the rule for at least 95% of patient encounters. *Supra*, ¶ 9. In addition, while the record does show that others failed to meet the 72-hour standard to varying degrees, it further shows that the appellant's failures far exceeded that of all other providers. IAF, Tab 4 at 419-998. In fact, the backlog of the one particular provider the appellant referred us to never exceeded 100 during the documented period, *id.* at 447-48, while the appellant's routinely exceeded 200, eventually peaking at more than 600, *id.* at 492, 521, 712, 741, 765, 791, 819, 846, 874, 900, 927, 959. Moreover, it is undisputed that the provider to which she referred was also placed on a PIP for failing to meet the charting requirements. RAF, Tab 6 at 22, 133-34. Accordingly, we are not persuaded by the appellant's arguments of inconsistency.

The appellant separately argues that the charting standard at issue in this appeal is invalid because it is too vague and too subjective. PFR File, Tab 1 at 17-21. We disagree. The fact that a performance standard may call for a certain amount of subjective judgment on the part of the employee's supervisor does not automatically invalidate the standard. *Henderson v. National Aeronautics & Space Administration*, 116 M.S.P.R. 96, ¶ 23 (2011). Instead, the Board has explained that performance standards must be sufficiently precise and

specific as to invoke a general consensus as to their meaning and content and provide firm benchmarks toward which the employee may aim her performance. *Id*.

Once more, the standard at issue required that the appellant complete charting within 72 hours of a patient's visit, in accordance with ICD-10. While the appellant has alluded to the mechanics of ICD-10 and the associated coding, which was completed by a third party, as if those mechanics create ambiguity in the performance standard or improperly held her responsible for someone else's actions, PFR File, Tab 1 at 17, 19-20, we are not persuaded. The administrative judge found that the performance standard simply required that the appellant timely complete a patient's chart by providing adequate information, i.e., the information necessary for both follow-up treatment and reimbursement by the likes of Medicare or Tricare. ID at 2-3; *see, e.g.*, HT1 at 13-19 (testimony of the appellant's supervisor). The appellant has failed to identify any basis for us to conclude otherwise.

The appellant also asserts that because she was receiving feedback during the PIP, and none of that feedback reflected negatively about the quality of her charting, subsequent allegations of deficiencies in that regard demonstrate that the standard is too subjective. PFR File, Tab 1 at 19-21. Again, we are not persuaded. In essence, the appellant would have us fault agency officials for not recognizing deficiencies in the substance of her charting *during* the PIP when it was the appellant who effectively prevented the agency from doing so. As we previously discussed, the appellant's backlog of incomplete charts ballooned from more than 200 at the start of the PIP to more than 600 with just a few days remaining in the PIP, before the appellant eliminated her entire backlog at the final hour. These actions insulated the appellant from complete reviews of those 600 cases during the PIP, leaving the agency unable to review them prior to the PIP's end. Accordingly, any absence in criticism about the substance of her

charting *during* the PIP appears to be attributable to the appellant, not excessively subjective performance standards.

*Performance remained unacceptable*

As previously discussed, the agency initially informed the appellant that she successfully completed the PIP by closing all open encounters before the PIP's end. IAF, Tab 4 at 362, 366. But in conveying that conclusion, the agency noted that the appellant had not adhered to the schedule for eliminating her backlog. *Id*. at 362. The agency also indicated that a peer review would follow to verify the appropriateness of the appellant's charting. *Id*. at 366. After that peer review, the agency concluded that the appellant had failed the PIP. *E.g.*, *id*. at 372-73, 380-81, 400-01.

On review, the appellant points to a contradiction in the letter indicating that she failed the PIP. PFR File, Tab 1 at 18. The first paragraph of the letter states that the appellant failed the PIP, while the second paragraph states that she successfully completed the PIP. IAF, Tab 4 at 373. The administrative judge credited the agency's explanation for that latter paragraph, i.e., that it was inadvertently left in the second memoranda while cutting and pasting from the first. ID at 14 n.10 (referencing HT1 at 105-06 (testimony of appellant's supervisor); *compare* IAF, Tab 4 at 362 (initial success letter, explaining how the appellant had closed all open encounters by the PIP's end), *with id*. at 373 (subsequent fail letter, including the mirror image paragraph). While the appellant now argues that this explanation was not credible, PFR File, Tab 1 at 18-19, she has not presented any basis for us to disturb the administrative judge's conclusion to the contrary, *see Haebe v. Department of Justice*, 288 F.3d 1288, 1300-01 (Fed. Cir. 2002) (the Board will defer to the credibility determinations of an administrative judge when they are based, explicitly or implicitly, upon the observation of the demeanor of witnesses testifying at a hearing because the administrative judge is in the best position to observe the

demeanor of the witnesses and determine which witnesses were testifying credibly).

In concert with her bare assertion that the agency's explanation for the aforementioned contradiction is not credible, the appellant seems to suggest that she had successfully completed at least a portion of the PIP by adhering to the agency's timeliness standard of closing charts within 72 hours of a patient's visit. PFR File, Tab 1 at 18. However, she has not identified any evidence of the same, and the assertion cannot be reconciled with the well-documented ballooning of her backlog during the PIP. *See, e.g.*, IAF, Tab 4 at 351, 356-61, 948-59; HT1 at 104-05 (testimony of appellant's supervisor). Moreover, the appellant ultimately acknowledged that "the quality was poor" on the large number of patient charts that she closed at the final hour of her PIP. IAF, Tab 14 at 5; RAF, Tab 28, Hearing Transcript (HT2) at 329 (testimony of the appellant). Accordingly, to the extent that the appellant disputes the administrative judge's conclusion that her performance remained unacceptable, we are not persuaded. The record shows that the appellant failed to meet the agency's standards, both in terms of timeliness and quality. *E.g.*, IAF, Tab 4 at 380-81, 400, 948-59.

Remand is required in light of *Santos*.

During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, 1363, that, in addition to the elements of the agency's case set forth above, the agency must also "justify the institution of the PIP" by proving by "substantial evidence that the employee's performance was unacceptable . . . before the PIP." The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Accordingly, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id.*, ¶¶ 15-17. On remand, the

administrative judge shall accept argument and evidence on this issue, and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

**The appellant has not shown that the administrative judge abused his discretion in ruling on discovery matters.**

Below, the appellant submitted a motion to compel the production of documents associated with a risk management assessment involving the appellant's treatment of a particular patient. IAF, Tab 23 at 4-10, 17. Although her removal was not based on the assessment or treatment of any particular patient, the appellant argued that the documents associated with the risk management assessment were relevant, particularly because the two actions had some overlap in time and she suspected that the agency was singling her out for the assessment to exhibit discriminatory animus. *Id.* at 4-9. The agency objected based on relevancy, but also on the basis that the documents were protected under 10 U.S.C. § 1102. IAF, Tab 23 at 17, Tab 24 at 4-11. That statute deems certain medical quality assurance records confidential and privileged, authorizing disclosure only in specifically delineated circumstances. 10 U.S.C. § 1102. The administrative judge found that the records at issue were privileged under section 1102 and, therefore, denied the appellant's motion to compel. IAF, Tab 26. The administrative judge did not base his ruling on the relevancy of the documents or reach a conclusion concerning the same.

On review, the appellant argues that the denial of her motion to compel was prejudicial to her case. PFR File, Tab 1 at 22-23. She refers back to the argument from her motion to compel, while further describing how the requested documents may have been relevant to the agency's motive, her health, and her job performance. *Id.* In other words, while the appellant's petition reiterates why she believes the requested records were relevant to her case, her petition fails to address the administrative judge's rationale for denying her motion to compel,

i.e., the applicability of 10 U.S.C. § 1102.[7]  Accordingly, we discern no basis for concluding that the administrative judge abused his discretion and we will not address the matter further.  *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016) (an administrative judge has broad discretion in ruling on discovery matters, and absent an abuse of discretion, the Board will not find reversible error in such rulings); *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (finding that, before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect and identify the specific evidence  in the record which demonstrates the error).

<u>The appellant failed to establish her affirmative defense of disability discrimination based on a failure to accommodate.</u>

As previously mentioned, the appellant raised a number of affirmative defenses below, but the administrative judge found that she did not prove any of them.   ID at 17-32.   On review, the appellant has limited her substantive arguments to ones concerning disability discrimination, so this decision will be similarly focused.[8]

The Rehabilitation Act requires an agency to provide reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 10 (2014).   With

---

[7] In its response to the appellant's petition for review, the agency argued that the administrative judge properly applied the privilege at issue.  PFR File, Tab 3 at 13-19. Having failed to do so in her petition, the appellant then argued otherwise in her reply brief.  PFR File, Tab 4 at 11-14.  We need not consider those arguments because the Board's regulations preclude a party from raising new allegations of error in their reply. 5 C.F.R. § 1201.114(a)(4).   The agency's response did not open the door for the appellant to raise brand new arguments that she failed to raise in her petition for review.

[8] The appellant also referred to reprisal, summarily asserting that she met her associated burden of proof.  PFR File, Tab 1 at 23, 25.  However, in the absence of any substantive argument, we will not address that claim further.  *Weaver*, 2 M.S.P.R. at 133.

exceptions not applicable here, the term "qualified" means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position the individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position.[9]  *Id*.; 29 C.F.R. § 1630.2(m).  Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions, or reassigning the employee to a vacant position whose duties the employee can perform.  *Clemens*, 120 M.S.P.R. 616, ¶ 10.

The administrative judge assumed that the appellant had a disability for the purposes of his decision, but found that the appellant's failure to accommodate claim failed because the appellant never articulated a reasonable accommodation that would permit her to perform the essential functions of her position.  ID at 18-22.  Among other things, he noted that after the appellant's attorney included a vague reference to the Americans with Disabilities Act (ADA) in response to the proposed removal, the agency responded by asking if the appellant had a disability and needed a reasonable accommodation, but the appellant failed to respond.  ID at 20-21 (citing IAF, Tab 4 at 996; RAF, Tab 9 at 66).

On review, the appellant argues that while she may not have ever used the term "accommodation" in discussions with the agency, the record showed that she did request help, triggering the agency's obligation to engage in the interactive process.  PFR File, Tab 1 at 23-24 (referencing HT2 (testimony of appellant's union representative)); *see Clemens*, 120 M.S.P.R. 616, ¶ 12 (recognizing that an employee only has a general responsibility to inform her employer that she needs accommodation for a medical condition, after which the employer must engage in the interactive process to determine an appropriate accommodation).  However,

---

[9] The initial decision contains a typographical error regarding the pertinent regulations. ID at 18 (citing 5 C.F.R. §§ 1630.2, 1630.9); *see* 29 C.F.R. §§ 1630.2, 1630.9.

even if we agreed that the appellant met her obligation to trigger the interactive process, she has failed to explain how the agency failed to do its part. Again, during the response period for her proposed removal, the agency specifically asked if the appellant had a disability and needed an associated reasonable accommodation. IAF, Tab 4 at 996. In doing so, the agency acknowledged that the appellant's response could result in her retention, rather than removal, via reasonable accommodation. *Id*. Yet it seems that the appellant provided no response.[10] Accordingly, we agree with the administrative judge; the appellant's failure to accommodate claim is unavailing. *See Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 15 (2014) (recognizing that both parties must engage in the interactive process in good faith); *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 18 (2010) (finding that an employee did not prove the denial of reasonable accommodation where he was unresponsive to the agency's good faith attempts to engage in the interactive process).

On remand, the administrative judge shall make new findings as to the appellant's disparate treatment disability discrimination claims.

After the administrative judge issued the initial decision, the Board clarified the standards for a disability discrimination disparate treatment claim. Specifically, we recognized that such claims are subject to a motivating factor standard. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 40. On remand, the administrative judge shall reconsider the appellant's disparate treatment disability discrimination claim under the recently-clarified legal standard along with any additional evidence adduced.

---

[10] In her reply, the appellant suggests that the agency erred by asking her attorney about any potential disability or need for accommodation, rather than asking the appellant herself. PFR File, Tab 4 at 14. Yet it was the appellant's attorney who implicated the Rehabilitation Act and advised, "[s]hould anyone wish to discuss any issue involved with [the appellant], please do not hesitate to contact me. I ask that [the appellant's representation] by counsel be accorded the appropriate and required deference." RAF, Tab 9 at 66.

**ORDER**

For the reasons discussed above, we REMAND this appeal to the Central Regional Office for further adjudication in accordance with this Remand Order. On remand, the judge shall accept argument and evidence and make findings as to whether the agency showed that the appellant's performance was unacceptable prior to the PIP. The administrative judge shall also reconsider the appellant's affirmative defense of disparate treatment disability discrimination and make new findings on that issue. The administrative judge may incorporate his prior findings, as appropriate.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.